## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| EVON F., | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **No. 2:23-cv-00383-LEW** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erroneously (1) evaluated medical opinion evidence in determining her residual functional capacity (RFC), (2) discredited her subjective statements regarding her symptoms and limitations, and (3) failed to evaluate nonmedical evidence of record. *See* Plaintiff's Brief (ECF No. 22) at 1-2. I discern no error and recommend that the Court affirm the Commissioner's decision.

## I. Background

The Plaintiff applied for benefits in December 2020. *See* Record at 1129. After her claim was denied at the initial level, the Plaintiff requested that it be reconsidered, but the Appeals Council instead consolidated it with her prior disability benefits claim that was to be addressed by the ALJ on remand from this Court.[1]

---

[1] The Plaintiff had previously applied for benefits in January 2018 and, after the ALJ's unfavorable decision on that claim became final, she appealed to this Court. *See id.* at 1-4, 16-28, 34-71, 95-107, 136, 1114-15. In July 2021, at the Commissioner's request, this Court reversed and remanded the ALJ's decision for further proceedings to "develop the record and obtain medical expert evidence

*See* 1124-25, 1129-34, 1186. The ALJ held an initial remand hearing in November 2021, *see id.* at 984-1032, and a supplemental hearing in December 2022, *see id.* at 1033-85, and then issued a written decision in February 2023 finding that the Plaintiff suffered from the severe impairments of myofascial pain syndrome; fibromyalgia; degenerative disc disease of the lumbar, thoracic, and cervical spine; bilateral plantar fasciitis; Achilles tendonitis; bipolar disorder; anxiety disorder; and post-traumatic stress disorder (PTSD), *see id.* at 958.

Considering those impairments, the ALJ found that the Plaintiff had—during the relevant period—the RFC to perform sedentary work except that she could lift and carry ten pounds occasionally and less than ten pounds frequently; could sit for six hours and stand or walk for two hours in an eight-hour day; could never climb ladders, ropes, or scaffolding; could occasionally kneel, stoop, crouch, crawl, and climb stairs and ramps; could occasionally balance on narrow, unsteady, or erratic surfaces; needed to avoid concentrated exposure to extreme cold or heat, wetness, humidity, unprotected heights, and dangerous machinery; could understand, remember, and carry out simple instructions; could perform simple, routine, and repetitive tasks over an eight-hour workday with a normal break schedule; could make simple work-related decisions; could occasionally interact with the public if doing so required no more than exchanging non-personal, work-related information or handing off products or materials; could tolerate simple routine changes in a work setting; and

_____

regarding the claimant's exertional limitations; to further consider the medical opinions; to reconsider the claimant's residual functional capacity; and, if necessary, to obtain vocational expert evidence." *Id.* at 1116-18. The Appeals Council then consolidated the Plaintiff's two claims and remanded the case to the ALJ, parroting this Court's instructions. *See id.* at 1124-25.

could occasionally interact with supervisors and coworkers. *See id.* at 961.

The ALJ concluded that the Plaintiff could not return to her past relevant work with such an RFC but that she could perform other jobs existing in significant numbers in the national economy and was therefore not disabled from February 5, 2016, her potential disability onset date, through September 30, 2020, her date last insured. *See id.* at 955, 958, 972-74. The Plaintiff filed exceptions to the ALJ's decision with the Appeals Council, which declined to assume jurisdiction; hence, the ALJ's February 2023 decision is the Commissioner's final determination after remand. *See id.* at 945-48; 20 C.F.R. §§ 404.981, 404.984(b)(2).

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The Plaintiff first contends that the ALJ erroneously evaluated the medical opinions of testifying medical expert Steven Goldstein, M.D., treating physician Katrina Sink, M.D., and psychiatric provider Barbara Logan, NP, in determining the Plaintiff's RFC. *See* Plaintiff's Brief at 9-13.

Dr. Goldstein opined that the Plaintiff could function at least at the sedentary exertion level, and that although she could never climb ladders, ropes, or scaffolds she could occasionally perform all other postural activities. *See* Record at 1071. The ALJ found Dr. Goldstein's opinion "generally persuasive because it [was] consistent with the overall evidence, including . . . diagnostic studies and physical examinations showing relatively minor abnormalities," and supported by the Plaintiff's "routine and conservative treatment history" that showed "improvement with medical treatment." *Id.* at 970. The ALJ also noted that Dr. Goldstein's opinion that the Plaintiff could perform sedentary work was supported by her "largely intact activities of daily living." *Id.*

Dr. Sink opined that the Plaintiff was capable of "less than the full range of sedentary work and [experienced] limitations that appear[ed] to preclude full time remunerative employment, such as the inability to sit, stand, and walk for 8-hours total in a workday, being off-task for 15-20% of the workday, and being absent from work more than 4 days per month." *Id.* at 745-48, 971. The ALJ found Dr. Sink's opinion unpersuasive because it was "inconsistent with the largely benign clinical findings" in her own treatment notes as well as the Plaintiff's "substantial" activities

4

of daily living. *Id.* at 971. The ALJ also noted that Dr. Sink's off task limitation was unsupported by the normal findings of attention and concentration in the Plaintiff's mental status examinations, and that the record did not reflect "frequently missed medical appointments that would support [her] assessed rate of absenteeism." *Id.*

Finally, NP Logan opined that the Plaintiff had fair to impaired functioning in understanding, remembering or applying information, concentrating, persisting and maintaining pace, and adapting or managing oneself; fair to markedly impaired functioning in interacting with others; that she could occasionally interact with coworkers, supervisors, and the public; and that she would likely be off task 15-20% of the workday and absent from work twice a month. *See id.* at 750-52. The ALJ found NP Logan's opinion somewhat persuasive, to the extent that it was consistent with moderate mental limitations, but that more restrictive mental limitations were "not supported by the [Plaintiff's] stable and largely benign longitudinal clinic presentation" and "inconsistent with [her] substantial reported activities." *Id.* at 971.

The Plaintiff asserts that the ALJ inadequately evaluated the supportability and consistency of these medical opinions. *See* Plaintiff's Brief at 9-13; 20 C.F.R. § 404.1520c(a)-(c). Specifically, the Plaintiff argues that the ALJ neglected to test the opinions against more than the objective medical evidence of record,[2]

---

[2] In the same breath, the Plaintiff argues that the ALJ leaned too heavily on her reported activities of daily living in his assessment of these medical opinions. *See* Plaintiff's Brief at 11. On this point, the Plaintiff advises only that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* (quoting *Sacilowski v. Saul*, 959 F.3d 431, 440 (1st Cir. 2020)). But the Plaintiff does not contend that such a result occurred in this case; thus, the argument is waived as undeveloped. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

and failed to explain why Dr. Sink's reasoning was inadequate to support her opinion regarding the Plaintiff's likely time off task.[3] *See* Plaintiff's Brief at 9-13.

These arguments are unavailing. The ALJ thoroughly discussed the case record, including evidence other than the objective medical evidence, *see* Record at 958-72, and then expressly indicated whether specific evidence supported or was consistent with the relevant opinions, *see id.* at 968-72; 20 C.F.R § 404.1520c(a)-(c); *see also West v. Berryhill,* No. 17-1170, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017) ("[T]he court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings."). Moreover, the ALJ was not obligated to provide a detailed evaluation of every statement in Dr. Sink's opinion. *See* 20 C.F.R. § 404.1520c(b)(1) ("[I]t is not administratively feasible . . . to articulate in each . . . decision how we considered all of the factors for all of the [record] medical opinions . . . ."); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017) (stating that the agency uses "a reasonable articulation standard . . . that does not require written analysis about how we consider each piece of evidence").

The Plaintiff next challenges the ALJ's subjective-symptom determination, arguing that although he analyzed the Plaintiff's statements against the objective medical evidence of record, he erroneously omitted any discussion "of the factors to

---

[3] The Plaintiff also claims that the ALJ erred in using her medical appointment attendance record to gauge the supportability of Dr. Sink's assessed rate of absenteeism. *See* Plaintiff's Brief at 12-13. This point falls flat. The ALJ was required to evaluate all of the record evidence, which necessarily included the Plaintiff's medical appointment attendance record. *See* 20 C.F.R. § 404.1520(a)(3). Moreover, even if it were error for the ALJ to rely on that evidence, the record reflects that he found Dr. Sink's opinion unpersuasive for several other reasons, which means remanding on this point would be nothing but "an empty exercise." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000).

consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms as listed in SSR 16-3p(2)(d)." Plaintiff's Brief at 13-14; *see also* SSR 16-3p, 2017 WL 5180304, at \*6 (Oct. 25, 2017) ("If [an ALJ] cannot make a [fully favorable] disability determination . . . based solely on objective medical evidence, then [the ALJ] carefully considers other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms . . . includ[ing] statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in our regulations.").[4]

This argument also fails. An ALJ need only "discuss the factors pertinent to the evidence of record," which is exactly what occurred in this case. SSR 16-3p, 2017 WL 5180304, at \*8; *see also Crocker v. Astrue*, No. 07-220-P-S, 2008 WL 2775980, at \*6 (D. Me. June 30, 2008) (rec. dec.) (rejecting the argument that an ALJ must mechanically address each regulatory factor), *aff'd*, 2008 WL 2875324 (D. Me. July 23, 2008). In his evaluation of the Plaintiff's physical impairments, the ALJ cited her diagnostic testing and physical examinations that showed only minor abnormalities, her routine and conservative treatment history, and her own reports of improved symptoms. *See* Record at 965-66. As for the

---

[4] These factors include (1) "daily activities," (2) "[t]he location, duration, frequency, and intensity of pain and other symptoms," (3) "[f]actors that precipitate and aggravate the symptoms," (4) "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms," (5) "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms," (6) "[a]ny measures other than treatment that an individual uses or has used to relieve pain or other symptoms," and (7) "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at \*7-8; *see also* 20 C.F.R. § 404.1529(c)(3) (listing the same factors).

Plaintiff's mental impairments, the ALJ noted that there was "no evidence of psychiatric hospitalization or episodes of decompensation," and the Plaintiff had only "intermittently participated in therapy sessions," treated her symptoms "somewhat successfully" with prescription medications, "no longer require[d] mood stabilization medication," reported "mild symptoms during her medication management follow up visits," and that her mental status examinations were all benign. *Id.* at 967. The ALJ also found the Plaintiff's activities of daily living inconsistent with the extent of her alleged symptoms. *See id.* at 968. For these reasons, the ALJ's subjective-symptom determination satisfied regulatory requirements. *See Dale W. v. Berryhill*, No. 2:17-cv-00213-JDL, 2018 WL 2278253, at *4 (D. Me. May 18, 2018) (rec. dec.) (holding that an ALJ adequately evaluated a "plaintiff's claimed symptoms pursuant to SSR 16-3p" when he "articulat[ed] why he deemed particular categories of alleged symptoms . . . inconsistent in some respects with the evidence of record"), *aff'd in relevant part*, 2018 WL 4520195 (D. Me. Aug. 15, 2018).

Lastly, the Plaintiff argues that the ALJ erred in failing to consider the third-party function reports that her friend completed. *See* Plaintiff's Brief at 14. This is incorrect. The ALJ remarked in his decision that the function reports supplied by a third party contained allegations similar to those lodged by the Plaintiff, which plainly indicates that he considered them in assessing her RFC. *See* Record at 962. That was all he was required to do. *See* 20 C.F.R. § 404.1520c(d) (stating that ALJs are not subject to the same articulation standards when assessing nonmedical source evidence as they are for medical opinions or prior administrative medical findings).

## IV.  Conclusion

Accordingly, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: January 24, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge